UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RAYMOND F. GARCIA,

        Petitioner,

vs.                              Case No. 5:17-cv-121-Oc-39PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

**ORDER**

**I.  INTRODUCTION**

Through his Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 13), Petitioner, Raymond F. Garcia, challenges his state court (Marion County) conviction for twelve counts of possession of child pornography. Petitioner raises 28 grounds. Respondents filed a Response to Petition (Response) (Doc. 16).[1] Petitioner countered with his Reply Response to Respondent [sic] Show Cause (Reply) (Doc. 17). The Petition is timely filed. Response at 13-15.

_____

[1] The Court will hereinafter refer to the exhibits in the Appendix (Doc. 16) as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced.

## II. EVIDENTIARY HEARING

As relief, Petitioner asks for an evidentiary hearing, a new trial, and release from the Florida Department of Corrections. Petition at 50. "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same). A petitioner must make a specific factual proffer or proffer evidence that, if true, would provide entitlement to relief. Jones, 834 F.3d at 1319 (citations omitted). Conclusory allegations will not suffice. Id.

In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief;[2] therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

---

[2] The Court notes Petitioner received an evidentiary hearing on one claim of ineffective assistance of trial counsel in state court.

Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Thus, the Court finds Petitioner is not entitled to an evidentiary hearing. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). Thus, Petitioner's request for an evidentiary hearing is denied.

### III.  THE PETITION

Petitioner raises twenty-eight grounds for habeas relief: (1) the ineffective assistance of appellate counsel for misquoting trial counsel's judgment of acquittal, in violation of the Fifth, Sixth, and Fourteenth Amendments; (2) the ineffective assistance of appellate counsel for failure to raise trial counsel's objections on direct appeal, in violation of the Fifth, Sixth, and Fourteenth Amendments; (3) the ineffective assistance of appellate counsel for failure to raise trial counsel's objection concerning the state's witness, Detective Mark Peavy's, misleading statement concerning the time of Petitioner's arrest, in violation of the Fifth, Sixth, and Fourteenth Amendments; (4) the ineffective assistance of appellate counsel for failure to raise a due process violation concerning the state's failure to prove possession, in violation of the Fifth, Sixth, and Fourteenth Amendments; (5) the ineffective assistance of appellate counsel for failure to investigate and reliance on phone calls to file an <u>Anders</u>[3] brief,

---

3 <u>Anders v. California</u>, 386 U.S. 738 (1967).

in violation of the Fifth, Sixth, and Fourteenth Amendments; (6) the ineffective assistance of counsel for failure to challenge the care, custody, and control of the equipment, in violation of the Fifth, Sixth, and Fourteenth Amendments; (7) the ineffective assistance of counsel for failure to suppress evidence seized by illegal search and seizure, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments; (8) the ineffective assistance of counsel for failure to move for a judgment of acquittal based on insufficiency of the evidence, in violation of the Fifth, Sixth, and Fourteenth Amendments; (9) the ineffective assistance of counsel for failure to investigate and move to suppress Petitioner's phone calls to family used to circumvent <u>Miranda</u>[4], in violation of the Fifth, Sixth, and Fourteenth Amendments; (10) the ineffective assistance of counsel for failure to suppress phone calls used to circumvent <u>Miranda</u>, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments; (11) the ineffective assistance of counsel for failure to suppress phone calls when Petitioner had an expectation of privacy, in violation of the Fifth, Sixth, and Fourteenth Amendments; (12) the ineffective assistance of counsel for failure to suppress calls made by deliberate elicitation, in violation of the Fifth, Sixth, and Fourteenth Amendments; (13) the ineffective assistance of counsel

---

4 <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

for failure to move for suppression of irrelevant phone calls, in violation of the Fifth, Sixth, and Fourteenth Amendments; (14) the ineffective assistance of counsel for failure to object to a compact disc not placed in evidence, taken from evidence, or viewed by counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments; (15) the ineffective assistance of counsel for failure to object to the display of pictures with no legal or medical value used to inflame the passions of the jury, in violation of the Fifth, Sixth, and Fourteenth Amendments; (16) the ineffective assistance of counsel for failure to object and preserve the issue that jury instruction 16.11 is unconstitutionally vague for leaving out the definition of possession, a required element of the crime of possession of child pornography, in violation of the Fifth, Sixth, and Fourteenth Amendments; (17) the ineffective assistance of counsel for failure to object to the jury instruction on the stipulation, which eliminated the jury's obligation to determine the state proved all elements of the offense, in violation of the Fifth, Sixth, and Fourteenth Amendments; (18) the ineffective assistance of counsel for misadvising Petitioner concerning his right to testify, in violation of the Fifth, Sixth, and Fourteenth Amendments; (19) the ineffective assistance of counsel for failure to object to Detective Peavy's misleading statement concerning the time of Petitioner's arrest, in violation

of the Fifth, Sixth, and Fourteenth Amendments; (20) the ineffective assistance of counsel for failure to call defense witness Mark Ash, in violation of the Fifth, Sixth, and Fourteenth Amendments; (21) the ineffective assistance of counsel for failure to call a mental health expert to establish Petitioner's state of mind during the phone calls and for failure to investigate a possible defense, in violation of the Fifth, Sixth, and Fourteenth Amendments; (22) the sentence is unconstitutional as the enhancement statute, Fla. Stat. § 775.0847, fails to stipulate what or how many offenses to enhance, allowing the state to enhance and run offenses consecutively in violation of the Fifth, Sixth, and Fourteenth Amendments; (23) the trial court erred by allowing the state to amend ten counts after the statute of limitations had run, in violation of the Fifth, Sixth, and Fourteenth Amendments; (24) the trial court erred in sentencing Petitioner to eight counts that fail to meet the "knowingly element" of Fla. Stat. § 827.071(5), in violation of the Fifth, Sixth, and Fourteenth Amendments; (25) the trial court erred by acting as a prosecutor during the post-conviction evidentiary hearing, in violation of the Fifth, Sixth, and Fourteenth Amendments; (26) the trial court and the Fifth District Court of Appeal (5th DCA) deprived Petitioner of due process of law because these state courts found post-conviction claims procedurally barred as ordinary trial court

errors, in violation of the Fifth and Fourteenth Amendments; (27) the trial court erred in dismissing the second Rule 3.800 motion without giving Petitioner an opportunity to amend or treating the motion as a successive Rule 3.850 motion, in violation of the Fifth and Fourteenth Amendments; and (28) the ineffective assistance of counsel for failure to investigate the law on speedy trial and for misadvising Petitioner to waive speedy trial when "waiver" does not exist, in violation of the Fifth, Sixth, and Fourteenth Amendments.

Petitioner states that ground 25, 27, and 28 were not presented to the highest state court as Petitioner did not have counsel to advise him to address these issues. Petition at 48.

Petitioner, in his Reply, concedes grounds 17 and 28 should be dismissed. Reply at 3, 9, 10. Therefore, grounds 17 and 28 are hereby dismissed with prejudice. <u>See</u> Response at 31-32, 33-36.

## IV. HABEAS REVIEW

In the Petition, Petitioner seeks habeas relief, claiming to be detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In undertaking its review of habeas claims, a district court must recognize that its authority to award habeas corpus relief to state prisoners "is limited-by both statute and Supreme Court precedent." <u>Knight v.</u>

Fla. Dep't of Corr., 936 F.3d 1322, 1330 (11th Cir. 2019). The relevant statute, the Antiterrorism and Effective Death Penalty Act (AEDPA), governs a state prisoner's federal petition for habeas corpus and limits a federal court's authority to award habeas relief. See 28 U.S.C. § 2254; Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Applying the statute, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019), petition for cert. filed, (U.S. Dec. 9, 2019) (No. 19-6918). As stated in Knight,

> A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams [v. Taylor, 529 U.S. 362 (2000)] at 413, 120 S. Ct. 1495. A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" <u>Virginia v. LeBlanc</u>, --- U.S. ----, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017)(quoting <u>Woods v. Donald</u>, --- U.S. ---, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015)); <u>see also</u> <u>Bell v. Cone</u>, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002) (explaining that "an unreasonable application is different from an incorrect one.").

<u>Knight</u>, 936 F.3d at 1330-31.

Thus, to obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911 F.3d 1335, 1351 (11th Cir. 2019), <u>cert. denied</u>, 140 S. Ct. 394 (2019). As noted in <u>Richter</u>, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. <u>Burt v. Titlow</u>, 571 U.S. 12, 19-20 (2013).

This Court is not obliged "to flyspeck the state court order or grade it." Meders, 911 F.3d at 1349. Moreover, even state court rulings for which no rationale or reasoning is provided are entitled to AEDPA deference, "absent a conspicuous misapplication of Supreme Court precedent." Id. at 1350 (citation and quotation marks omitted).

In undertaking its review, this Court must accept that a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). However, the presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Supreme Court precedent also limits the federal court's authority to award habeas relief. Unless pierced by one of two narrow exceptions: (1) new rules that are substantive rather than procedural, and (2) watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding, the rule of nonretroactivity set forth in Teague v. Lane, 489 U.S. 288, 300-301 (1989) (plurality opinion), providing that the federal court cannot disturb a state court conviction based on a constitutional rule announced after a conviction is final, is applicable. Knight, 936 F.3d at 1331 (citing Schiro v. Summerlin, 542 U.S. 348, 352-53 (2004)) (quotations and citations omitted). The "threshold Teague analysis" must be conducted if properly raised by the state, and the state prisoner must clear both hurdles, deference mandated by AEDPA and the rule of nonretroactivity, to successfully obtain federal habeas relief. Knight, 936 F.3d at 1331 (citation omitted).

Thus, a state habeas petitioner is faced with two constraints, AEDPA's generally formidable barrier to habeas relief except in specified circumstances, and the general principle of nonretroactivity limiting the disturbance of a state conviction based on a constitutional rule announced after a conviction became final except in two narrow exceptions. Even if the petitioner satisfies the hurdle demanded by Supreme Court precedent, state-

11

court judgments will not easily be set aside due to the applicability of the highly deferential AEDPA standard that is intentionally difficult to meet.  See Richter, 562 U.S. at 102. Although AEDPA does not impose a complete bar to issuing a writ, it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent.  Id.  In sum, application of the standard set forth in 28 U.S.C. § 2254(d) ensures that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, and not a mechanism for ordinary error correction.  Richter, 562 U.S. at 102-103 (citation and quotation marks omitted).

## V.  NOT COGNIZABLE

Four grounds, grounds 22, 25, 26, and 27, are not cognizable federal constitutional claims.  See Response at 20-22.  Therefore, Petitioner is not entitled to habeas relief on grounds 22, 25, 26, and 27.

## VI.  EXHAUSTION AND PROCEDURAL DEFAULT

Of the remaining grounds, Respondents assert part of ground 7 and grounds 12, 14, 15, 19, 21, 23, and 24 are unexhausted and/or procedurally barred.  Response at 16-21.  In addition, Respondents submit part of ground ten may be unexhausted, but concede that arguably ground ten is exhausted because the trial court treated

the claim as reframing claim three (ground 9, an ineffective assistance of counsel claim) and denied it. <u>Id</u>. at 16. As such, the Court will address ground ten, to the extent it has been exhausted in the state court system.

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>, <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. ----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012).

13

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). To demonstrate cause, a petitioner must show that some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999). If cause is established, a petitioner must demonstrate prejudice. To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." Owen, 568 F.3d at 908.

## A.  Ground 7

In ground 7, Petitioner raises a claim of the ineffective assistance of counsel for failure to suppress evidence seized by illegal search and seizure, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments.  Petition at 14.  Upon review, in ground 1(b) of Petitioner's Rule 3.850 post-conviction motion, Petitioner claimed his sister, Ramona Garcia, "did not have the authority to give law enforcement consent to search his computers and related equipment even though she was the lease holder of the residence."  Ex. R at 3.  Petitioner argued his counsel should have filed a motion to suppress the evidence on this ground.  Id.

The trial court, applying the Strickland v. Washington, 466 U.S. 668 (1984) standard, soundly rejected this claim finding it unsupported by the facts as the computer equipment was searched pursuant to a warrant.  Ex. U at 100-102.  Of note, the record contains the search warrant.  Id. at 146-55, Exhibit C.

To the extent Petitioner's ground 7 was exhausted in the post-conviction motion through ground 1(b) of the motion, the rejection of this claim by the state court is entitled to deference.  The trial court denied the claim, and the Fifth District Court of Appeal (5th DCA) affirmed per curiam.  Ex. JJ.

The 5th DCA affirmed without an opinion and explanation. This decision, although unexplained, is entitled to AEDPA

deference. Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

The Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Strickland</u>, and the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts. Ground seven, as exhausted in the state court in ground 1(b) of Rule 3.850 motion, is due to be denied.

In ground 7 of the federal Petition, Petitioner raises a claim of ineffective assistance of counsel for failure to suppress evidence obtained by illegal search and seizure but expands the claim and adds a new claim not previously exhausted, asserting the computer was illegally searched at 9:00 a.m. on January 30, 2009 [sic], as a file was downloaded and "[a] system restore takes an operator to start." Petition at 15. Notably, at trial, Frederick Cummings, a former police officer who conducted the forensic examination of the computers, testified the file creation and access date of January 31, 2009, was not done by a user but was initiated by the computer's automatic operating back-up system. Ex. E at 170-71. He explained, the system restore system is a

backup system that creates restore points, and it is done by the operating system, not a user. Id. at 171. Mr. Cummings also testified the laptop was affirmatively last accessed on January 22, 2009. Id. at 176.

In response to Respondents' assertion the additional claim is unexhausted, Petitioner contends he is making the same claim as he raised in the state court system. Reply at 2. To the extent Petitioner is contending he exhausted this additional claim in his Rule 3.850 motion, the Court is not convinced by his argument. The record does not demonstrate Petitioner exhausted the additional claim in the state courts. As a result, Petitioner has procedurally defaulted the claim.

Petitioner has failed to show cause, and he does not meet the prejudice or manifest injustice exceptions. Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995), Petitioner has not done so. The gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013). The fundamental miscarriage of justice exception is only

available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Ala.</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert. denied</u>, 535 U.S. 926 (2002). Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In conclusion, the Court finds the additional claim raised in ground 7 is unexhausted and procedurally defaulted. As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, the court deems the additional claim raised in ground 7 procedurally defaulted, and Petitioner is procedurally barred from raising the unexhausted portion of ground 7 in this proceeding.

To the extent Petitioner claims his procedural default should be excused based on the narrow exception under <u>Martinez</u>, Petitioner must demonstrate the underlying ineffectiveness claim is substantial.[5] Indeed, Petitioner must demonstrate the claim has some merit. <u>Martinez</u>, 566 U.S. at 14. In this instance, the underlying ineffectiveness claim raised in ground 7 lacks merit;

---

[5] The record demonstrates Petitioner did not have counsel for the filing of his post-conviction Rule 3.850 motion and the evidentiary hearing. Ex. R; Ex. V.

therefore, Petitioner has not demonstrated he can satisfy an exception to the procedural bar. To explain, the Court provides a merits analysis.

Petitioner asserts the following: "[c]ounsel should have investigated the time of the Sheriff's confiscation, to the applied method of system restore. He would then have been able to make a reasonable defense on the legality of an unlawful search and seizure." Petition at 15. Petitioner's argument is fundamentally flawed because the forensics examiner/former police officer testified: "the file creation and access date" of January 31, 2009 is found in a path called the "system volume information[,]" and it is a separate partition of the C drive. Ex. E at 170-71. He further attested, the C drive contains the "system volume information[,]" which is part of the "system restore" for the computer. Id. at 171. He explained this backup system creates restore points, in case something happens to the computer, and the automatic creation of the file results in restoration. Id. He described it as a hidden file that is not viewed by the user. Id. Finally, he said the file is created by the operating system, not a user. Id.

This testimony negates Petitioner's contention that defense counsel performed deficiently by not pursuing an investigation into the creation of the file on January 31, 2009, as the file

creation and access date resulted from the system restore or backup system for the computer, not due to a manual download by a user. Thus, the operating system automatically backed up the laptop directory on January 31, 2009.

The Court is not convinced that counsel performed deficiently by failing to investigate this matter further. The record demonstrates defense counsel effectively cross examined the forensics examiner about the file created on January 31, 2009. Ex. E at 197. Counsel asked in what possible ways the file was created on the laptop. Id. The witness responded the creation of the file is a result of a program on the computer that captures the most recent data since the last capture point, and the computer refreshes itself, updating the hard drive. Id. at 198.

The Court is not convinced that ground seven has some merit. As such, Petitioner has failed to show he falls within the narrow parameters of the ruling in Martinez, in which the Supreme Court recognized a narrow exception for ineffective assistance of counsel/absence of counsel at initial-review collateral proceedings. As Petitioner failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground 7.

## B.  Grounds 12, 14, 15, and 19

Respondents state, in grounds 12, 14, and 19, Petitioner raises claims of ineffective assistance of counsel, but he exhausted claims of trial court error in the state courts (labeled as issues sixteen, thirteen, and fourteen in the supplemental motion for post-conviction relief).  Response at 17, 19.  Similarly, Respondents contend Petitioner raises a claim of ineffective assistance of counsel in ground 15, while he exhausted a claim of trial court error in the state courts (labeled as ground four of the Rule 3.850 motion).  Response at 18.

In grounds 12, 14, 15, and 19, Petitioner raises claims of ineffective assistance of counsel.  Upon review, in ground four of the Rule 3.850 motion, Petitioner raised the following claim: "the trial court committed reversible error in allowing the state [to] show a child pornography video during closing arguments which was not a part of the evidence."  Ex. R at 14.  Notably, Petitioner pointed out that counsel strenuously objected to the showing of the videos during closing, but his objection was overruled.  Id. at 15.  The trial court found Petitioner's claim of trial court error procedurally barred as counsel raised an objection at trial and the matter could or should have been raised on direct appeal.  Ex. U at 104.  The 5th DCA affirmed.  Ex. JJ.

The record shows that in issue sixteen of the supplemental motion Petitioner raised the following claim:

> Incriminating statements procured by agents intentionally created a situation that was induced without benefit to counsel, under violation of due process safeguard by "deliberate elicitation" is plain, fundamental error, which can be brought forth at any time, even on appeal. A Sixth Amendment violation obtained. Error occurred through abuse of discretion, beyond any reasonable doubt, question of law standards, de novo.

Ex. S at 48.

The trial court addressed the claim that the trial court committed fundamental error by allowing the recorded jail calls to be entered into evidence, in violation of the Sixth Amendment. Ex. U at 110-11. The trial court rejected this claim as procedurally barred as it could or should have been raised at trial, and if properly preserved, on direct appeal. Id. at 111. The 5th DCA affirmed. Ex. JJ.

In issue thirteen of the supplemental motion, Petitioner claimed the trial court erred in allowing the showing of videos and pictures during closing, inflaming the passion of the jury. Ex. S at 47. For the same reasons stated in denying issue sixteen, the court found the claim procedurally barred. Ex. U at 110.

In issue fourteen of the supplemental motion, Petitioner claimed the trial court erred in not allowing the state's witness

22

to provide the correct date of Petitioner's arrest. Ex. S at 47. Again, the trial court found the trial court error claim procedurally barred, noting it could or should have been raised at trial, and, if properly preserved, on direct appeal. Ex. U at 110.

The record demonstrates Petitioner failed to raise and exhaust the claims of ineffective assistance of counsel presented in grounds 12, 14, 15, and 19 in the state court system. Thus, the claims of ineffective assistance of counsel are unexhausted and procedurally defaulted. Petitioner has failed to show cause and prejudice or demonstrate a fundamental miscarriage of justice will result if these claims of ineffective assistance of counsel are not addressed on their merits. Accordingly, grounds 12, 14, 15, and 19 are procedurally defaulted and Petitioner is barred from raising these grounds.

### C. Grounds 21, 23, and 24

Respondents contend grounds 21, 23, and 24 were procedurally barred by the state courts and are defaulted. Response at 36. The issue raised in ground 21 was raised in claim one of Petitioner's second motion for post-conviction relief, but the trial court found the second motion successive. Ex. NN at 3; Ex. OO. The 5th DCA affirmed, upholding the procedural bar. Ex. SS. The issues raised in grounds 23 and 24 were raised in claims two

and three of Petitioner's second motion to correct illegal sentence. Ex. EEE at 5, 9. The trial court denied these claims as procedurally barred. Ex. FFF. The 5th DCA affirmed per curiam, upholding the procedural bar. Ex. HHH.

Petitioner did not properly present these claims to the state courts. Any further attempts to seek post-conviction relief in the state courts on these grounds will be unavailing. As such, he has procedurally defaulted the claims.

"[A] state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution claim in state court, **or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default**." Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir.) (citations omitted) (emphasis added), cert. denied, 513 U.S. 1061 (1994). As he is procedurally barred from raising these grounds, at this stage, Petitioner must demonstrate cause and prejudice. He has failed to show cause and prejudice. Additionally, he has failed to show that failure to address these claims on the merits would result in a fundamental miscarriage of justice. This Court finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence.

Grounds 21, 23, and 24 are procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Thus, Petitioner is barred from pursuing grounds 21, 23, and 24 in federal court.

To the extent Petitioner blames his failure to properly exhaust ground 21, his claim of ineffective assistance of counsel for failure to call a mental health expert to establish Petitioner's state of mind during the phone calls and to investigate a possible defense, on the fact that he had no counsel to prepare his original Rule 3.850 motion, the Court is not convinced that ground 21 has some merit. An explanation follows.

Petitioner, in his supporting facts for ground 21, states his counsel could have called an expert to testify that Petitioner was excited or confused due to lack of medication for his psychiatric issues. Petition at 36. Petitioner states an expert would have testified that Petitioner would believe he was speaking as to one subject but in fact was speaking about another. Id.

The record belies Petitioner's contention he was in a confused state during the phone calls. The transcript of trial shows that in a recorded phone call Petitioner directed Mary Watts to get his important things, including his computer, the laptop, and the camera, but not his phone. Ex. E at 69-70. He also told Mary to bond him out. Id. at 72. In the second phone call to Ms. Watts,

Petitioner directed Ms. Watts to not go on his memory chips after Ms. Watts mentioned there were "other creepy" images on a memory chip. Id. at 75. Upon mention of the white disc, Petitioner told Ms. Watts not to go on the white disc and he said he knew what was on the pink disc. Id. at 77-78. Petitioner repeated his directive to Ms. Watts to not access the chips. Id. at 79.

In another phone call, Petitioner told Ms. Watts it was not him on the video with Brittany. Id. at 81-82. The record demonstrates Brittany Moore confirmed this fact as she testified at trial that the pictures were of her engaging in a sexual act with a person named Chris, a family member of Petitioner, when she was fifteen or sixteen years old. Id. at 228-230.

In an additional phone call, in a discussion about the MP3 player, Petitioner asked Ms. Watts if she was going to put Petitioner in prison for the rest of his life. Id. at 87-88. Petitioner said he did not know how the pictures were placed on the MP3 player, but he knew they came from the big computer. Id. at 88-89. Petitioner denied saving the images on purpose, said some may have come from Brian's computer, and accused Ms. Watts of trying to put Petitioner in prison by her actions. Id. at 90. Petitioner denied placing the images on the MP3 player. Id. at 92. He told Mary he wanted her to erase images because he did not want to answer any more questions about them. Id.

In another phone call, Petitioner, in response to Ms. Watts' statement that she needed to speak with Petitioner's sister to figure out what to do, told Ms. Watts she was going to put him in prison for life. _Id_. at 94. Petitioner said, "[i]f you do not break those chips, if you do not break them, they're going to put me in prison for the rest of my life [.]" _Id_. at 96.

Finally, in another phone call, Petitioner said his plan had been to put the images on Brandy's computer, but he did not do it. _Id_. at 104. He stated he did not know how the images got on the MP3 player. _Id_. at 104-105. He admitted to Ms. Watts he downloaded the images: "I downloaded them, like I did that." _Id_. at 105. He also said he kept them on the computer. _Id_.

The thrust of these conversations in phone calls initiated by Petitioner, was to direct Ms. Watts to destroy evidence that may harm Petitioner and to proceed to bond him out. Petitioner made certain admissions, denied that he was the individual in the images with Brittany, and repeatedly denied knowledge of how the images were placed on the MP3 player.

Petitioner's defense counsel did not perform deficiently by failing to obtain an expert to testify as to Petitioner's state of mind during the phone calls. Petitioner did not exhibit confusion when he directed Ms. Watts to destroy evidence and to bond him out. He knew he was facing serious charges and he wanted the

evidence destroyed.  He was accurate in his statements that the individual in the images with Brittany was another male, and he was consistent in his statements that he did not know how the images were placed on the MP3 player.  He obviously knew there was damning evidence to be found on his various devices as he asked Ms. Watts to destroy the devices.

Upon review, Petitioner has failed to show he falls within the narrow parameters of the ruling in <u>Martinez</u>.  As he has failed to demonstrate that his underlying claim of ineffective assistance of counsel is a substantial one, he does not meet the narrow exception.  As such, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground 21.

## VII.  REMAINING GROUNDS

In the remaining grounds (1-6, part of ground 7 (referred to as claim 1(b) in the state court system), 8-11, 13, 16, 18, and 20), Petitioner raises claims of ineffective assistance of trial counsel or ineffective assistance of appellate counsel. Petitioner adequately exhausted his claims of ineffective assistance of trial counsel in the state court system by presenting the relevant claims in his Motion for Postconviction Relief.  Ex. R; Ex. S; Ex. T; Ex. U; Ex. V; Ex. W; Ex. X; Ex. Y.  The Fifth DCA per curiam affirmed the decision of the trial court.  Ex. Z; Ex.

AA; Ex. BB; Ex. CC; Ex. DD; Ex. EE; Ex. FF; Ex. GG; Ex. HH; Ex. II; Ex. JJ; Ex. KK. Ex. LL; Ex. MM. Petitioner adequately exhausted his claims of ineffective assistance of appellate counsel in the state court system by presenting the relevant claims in his Petition Alleging Ineffective Assistance of Appellate Counsel. Ex. L; Ex. M; Ex. N; Ex. O; Ex. P; Ex. Q.

To prevail on a Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in Strickland, 466 U.S. at 688, requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

To obtain habeas relief, a counsel's errors must be so great that they adversely affect the defense. To satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The standard created by Strickland is a highly deferential one, requiring a most deferential review of counsel's decisions. Richter, 562 U.S. at 105. Not only is there the "Strickland

mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision. Nance, 922 F.3d at 1303. Thus,

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

Nance, 922 F.3d at 1303.

The two-part Strickland standard is also applicable to Petitioner's claims of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). The Eleventh Circuit describes Strickland's governance of this type of claim:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show

> that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064.

Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1331 (11th Cir. 2016), cert. denied, 137 S. Ct. 505 (2016).

As with a claim of ineffective assistance of trial counsel, the combination of Strickland and § 2254(d) requires a doubly deferential review of a state court decision. See Richter, 562 U.S. at 105. When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id.[6] at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288, 120 S. Ct. 746, 145 L.Ed.2d 756 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)); see also Burger v. Kemp, 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

---

[6] Strickland, 466 U.S. at 689.

Overstreet, 811 F.3d at 1287; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (footnote omitted) (since the underlying claims lack merit, "any deficiencies of counsel in failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel"), cert. denied, 558 U.S. 1151 (2010).

To satisfy the prejudice prong, a petitioner must show "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted), cert. denied, 543 U.S. 1080 (2005); see Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (per curiam) ("In order to establish prejudice, we must first review the merits of the omitted claim. Counsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'") (citations omitted), cert. denied, 559 U.S. 1010 (2010).

### A. Ineffective Assistance of Appellate Counsel

**Ground 1: the ineffective assistance of appellate counsel for misquoting trial counsel's judgment of acquittal, in violation of the Fifth, Sixth, and Fourteenth Amendments;**

**Ground 4: the ineffective assistance of appellate counsel for failure to raise a due process violation concerning the state's failure to prove possession, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

Respondents address grounds 1 and 4 together. Respondents succinctly summarize the claims, stating Petitioner argues the videos and pictures were not accessible by anyone, Petitioner did not know they were there, the computers and pictures were not knowingly in Petitioner's possession, and the computers were used by others. Response at 41. The Court will address these claims together.

The record shows defense counsel moved for a judgment of acquittal based on insufficiency of the evidence. Ex. E at 233. Counsel argued, "[t]he State's expert testified that there were no actual images or videos accessible by anyone found on the hard drives of any of these devices." Id. at 233-34. Counsel stated the videos were on the system volume information, an area of backup for the hard drive. Id. at 234. The court responded, that may be, but Petitioner made statements in the phone calls that he knew about their existence. Id. As such, the court denied the motion. Id. When counsel tried to argue lack of proof of possession, the court denied the motion. Id. at 235.

Of note, defense counsel renewed his objection to the viewing of the videos and images, "especially the videos which were not accessible and had, in fact, been deleted and the fact that he wasn't actually found in possession of any of this stuff." Id.

33

Counsel argued the two women, Ramona Garcia (sister) and Mary Watts (ex-wife), had possession of the items, not Petitioner. Id. Referencing the phone calls, the trial court denied the objection/motion. Id.

As noted above, Petitioner, in one of the phone calls, stated he downloaded images to the computer. He also made statements that he knew of their existence and wanted them destroyed by Ms. Watts. To the extent Petitioner argued that the computers and other items were in possession of his sister and ex-wife, the trial court rejected this argument based on the telephone conversations in which Petitioner directed his ex-wife to get his important stuff or things, like his computer, the laptop, and the camera. Ex. E at 70 ("My (indiscernible) my computer, (indiscernible) like that, the laptop, the camera."). Petitioner told Ms. Watts, "[d]o not go on my memory chip (indiscernible)." Id. at 75. He repeated, "[d]o not go on my chips[.]" Id. at 76. Petitioner stated he "downloaded everything off the computer[.]" Id. at 87. He explained he downloaded images planning to put them on Brandy's computer but kept the images on his computer. Id. at 104-105.

The record also shows the forensics examiner testified as to the images found on hardware. Ex. E at 160-62. Fred Cummings testified, for example, he found a video file (Count I) on the

loose hard drive, the C drive, in a folder called "lost files".
Id. at 163-64.  He explained, for it to be a lost file, the user
had to have placed it onto the hard drive at some point.  Id. at
165.  He found files in thumb databases.  Id. at 169.  He
discovered deleted files still on the computer in unallocated
space.  Id. at 172.  He also located videos on hard drives.  Id.
at 173-74.

As noted by Respondents, the examiner found child pornography
images, and most were not deleted, but some were.  Response at 45.
These images were not from pop-ups or from "browsing," but were
downloaded.  Ex. E at 165, 170.  Thus, it was left to the jury to
decide whether Petitioner knowingly possessed the child
pornography on his devices.  Ex. E at 281.

To prevail on a claim of ineffective assistance of appellate
counsel, the burden is heavy.  The Petitioner must:

> first show that his counsel was objectively
> unreasonable, see Strickland, 466 U.S., at
> 687-691, 104 S. Ct. 2052, in failing to find
> arguable issues to appeal-that is, that
> counsel unreasonably failed to discover
> nonfrivolous issues and to file a merits brief
> raising them. If [a petitioner] succeeds in
> such a showing, he then has the burden of
> demonstrating prejudice. That is, he must show
> a reasonable probability that, but for his
> counsel's unreasonable failure to file a
> merits brief, he would have prevailed on his
> appeal. See id., at 694, 104 S. Ct. 2052
> (defendant must show "a reasonable probability

that, but for counsel's unprofessional errors,
                    the result of the proceeding would have been
                    different").

Smith v. Robbins, 528 U.S. 259, 285-86 (2000).

        Here,  Petitioner  has  not  satisfied  the  Strickland
requirements with respect to his claims of ineffective assistance
of appellate counsel.  Petitioner has not alleged or shown that
the 5th DCA misapplied Strickland or unreasonably applied the law
to the facts.  Indeed, Petitioner has failed to meet either prong
of Strickland.

        In sum, Petitioner has not shown the 5th DCA decided these
claims in a manner contrary to Strickland, or that the 5th DCA's
application of Strickland was objectively unreasonable.  AEDPA
deference is due.

        The record shows appellate counsel filed an Anders brief and
presented one issue:  whether the trial court erred by denying the
motion for judgment of acquittal.  Ex. G at 4.  Although appellate
counsel said no actual images appeared on the electronic equipment
rather than describing them as inaccessible, the 5th DCA still had
the  full  opportunity  to  review  the  denial  of  the  motion  for
judgment  of  acquittal,  as  that  was  the  stated  issue.   The  re-
characterization  or  re-phrasing  by  appellate  counsel  did  not

inhibit the 5th DCA's review of the claim of trial court error in denying the motion for judgment of acquittal.

As noted in the appellate counsel's argument in the <u>Anders</u> brief, pursuant to <u>Anders</u>, "the appellate court must examine the record to the extent necessary to discover any errors apparent on the face of the record." Ex. G at 3.

The Court is also not convinced that appellate counsel performed deficiently for failure to raise a due process claim based on the state's failure to prove possession. The record demonstrates the state began opening statement by announcing: "[a]nd you are going to hear about how the State first became aware of the fact that Mr. Garcia was in possession of these items." Ex. E at 36. Again, in closing, the prosecutor reiterated, the state must show Petitioner: "knowingly possessed a photograph or video." <u>Id</u>. at 254. The trial court instructed the jury the state must prove three elements beyond a reasonable doubt, including the element that Petitioner "knowingly possessed a photograph or a video." <u>Id</u>. at 281.

Upon the filing of Petitioner's state petition for writ of habeas corpus, Ex. L, the 5th DCA reviewed Petitioner's arguments concerning claims Petitioner argued his appellate counsel should have raised on direct appeal, and the 5th DCA denied the petition,

finding it to be without merit, thus making its determination that no appellate relief would have been forthcoming on these stated grounds. Ex. O. Thus, Petitioner has failed to show a reasonable probability the outcome of the direct appeal would have been different had appellate counsel argued as Petitioner's suggests appellate counsel should have on direct appeal.

In conclusion, the denial of relief on the ineffective assistance of appellate counsel claims was neither contrary to, nor an unreasonable application of Strickland. Therefore, Petitioner is not entitled to habeas relief on grounds one and four.

**Ground 2: the ineffective assistance of appellate counsel for failure to raise trial counsel's objections on direct appeal, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

Petitioner raised this claim in issue two of his state habeas corpus petition. Ex. L at 3-4. The 5th DCA denied relief. Ex. O. Thus, there is a qualifying state court decision on the merits.

Petitioner asserts his appellate counsel was ineffective for failure to raise the issue concerning trial counsel's objection to the state showing images during closing argument. Petition at 7. Petitioner asserts there was no justifiable reason for showing the images in closing as there was no lawful or medical reason to show

pictures and this measure was used to inflame the passions of the jury. Id. Further, Petitioner contends the stipulation eliminated the need for testimony concerning the age of the children.[7] Id.

The record reflects that there was a stipulation that the age of the children in the images was under eighteen. Ex. E at 27. A discussion took place on the record concerning the state's reasons for playing the videos during closing. Id. at 225-26. The evidence had been admitted, but the prosecutor did not want to show the images twice, during the presentation of evidence and during closing. Id. at 226. The trial court overruled defense counsel's objection to the showing of the videos during closing. Id. Defense counsel renewed his objection to the viewing of the videos and images. Id. at 235. The court overruled the objection. Id.

_____

[7] The trial court read the instruction that the parties stipulated that each image or video depicts a child less than 18 years of age. Ex. E at 281. Thus, the court instructed a portion of an element should be considered as proven beyond a reasonable doubt. Id. The jury still had to find, beyond a reasonable doubt, Petitioner knowingly possessed a photograph or a video; the photograph or video included, in whole or in part, sexual conduct by a child (as stipulated less than 18 years of age); and, Petitioner knew that the photograph or video included sexual conduct by a child of the stipulated age. Id.

The prosecutor reminded the court the whole videos were placed in evidence.  Id. at 250.  The court instructed the jury that a portion of the videos would be played during closing, but the jury could watch the complete videos during deliberation, if the jury elected to do so.  Id. at 253, 294-95.

By playing the videos during closing, the prosecutor avoided having to display the pornographic images twice.  Moreover, the prosecutor limited the showing to a small portion of the videos.

Upon the filing of Petitioner's state petition for writ of habeas corpus, the 5th DCA reviewed Petitioner's argument concerning Petitioner's contention that his appellate counsel should have raised the issue concerning trial counsel's objection to the state showing images during closing argument, and the 5th DCA rejected the claim, finding it without merit, thus making its determination that no appellate relief would have been forthcoming on this ground.  Ex. O.  Therefore, Petitioner has not shown a reasonable probability the outcome of his direct appeal would have been different had appellate counsel argued as Petitioner suggests appellate counsel should have argued on direct appeal.

The Court concludes Petitioner is not entitled to relief on ground two as the denial of relief on Petitioner's claim of ineffective assistance of appellate counsel was neither contrary

to, nor an unreasonable application of <u>Strickland</u>.  Ground two is due to be denied.

**Ground 3:  the ineffective assistance of appellate counsel for failure to raise trial counsel's objection concerning the state's witness, Detective Mark Peavy's, misleading statement concerning the time of Petitioner's arrest, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

Petitioner raised this claim of ineffective assistance of appellate counsel in his state habeas corpus petition as claim three.  Ex. L at 4-5.  The 5th DCA denied this claim on its merits.  Ex. O.  Thus, there is a qualifying decision.  This decision is entitled to AEDPA deference.  An explanation follows.

The record demonstrates Petitioner was confined in jail on January 30, 2009, when he made a phone call to his sister, Ramona Garcia.  Ex. E at 44.  Mary Watts, Petitioner's ex-wife, also testified she received a phone call from Petitioner from the jail on January 30, 2009.  <u>Id</u>. at 68-69.  On cross examination of Ms. Watts, defense counsel asked Ms. Watts whether she was aware that a large child pornography video had been created on the laptop on January 31, 2009 at 9:00 a.m.  <u>Id</u>. at 117.  Ms. Watts said she was unaware of the creation of the video, did not know how it happened,

and confirmed she did not have possession of the computer that morning, nor did Mr. Garcia.  <u>Id</u>. at 117-18.

As noted previously, Mr. Cummings, the forensics examiner, testified the file creation and access date of January 31, 2009 on the laptop was found in the system volume information, a separate partition of the C drive and part of the system restore for the computer.  <u>Id</u>. at 170-71.  He explained this is a backup system, routinely done by the operating system, not a user.  <u>Id</u>. at 171. He said it is a hidden file that cannot be viewed by the user unless the user goes through a special program to recreate the restore point.  <u>Id</u>.  He further testified the laptop was last accessed by a user on January 22, 2009.  <u>Id</u>. at 176.  On cross examination, defense counsel inquired further as to how the laptop file was created on January 31, 2009.  <u>Id</u>. at 197.  Mr. Cummings responded that there is a program on the computer that, at certain intervals, captures the most recent data from the creation of the last capture point and "refreshes itself, so to speak[.]" <u>Id</u>. at 198.

After Mr. Cummings testified, the jury submitted three questions that were answered in part.  <u>Id</u>. at 219-20; Ex. L at 135-37.  Mr. Cummings testified he had no knowledge of when Petitioner was arrested on other charges prior to his arrest for

this case.  Ex. E at 220.  Mr. Cummings testified he could not say who was using the computer when files were accessed.  Id.

Thereafter, Detective Mark Peavy testified Petitioner was arrested on the unrelated charges on January 30, 2009.  Id. at 232-33.  Defense counsel said, "[n]o cross[.]" Id. at 233.

After the defense rested, defense counsel brought to the court's attention an issue concerning the date Petitioner was arrested, January 23, 2009.  Id. at 242.  The Court said it was not coming in unless Petitioner wanted to testify.  Id.  Defense counsel wanted to re-call Mr. Peavy to clarify the date.  Id.  The court responded that everyone announced rest and the court was going straight to closing.  Id.  The court reiterated, it was not going to reopen the case for cross examination of Detective Peavy. Id. at 244.  The court told defense counsel he would have to determine whether it was worthwhile to call Detective Peavy.  Id. At the defense table, a discussion was held off the record.  Id. The court asked Petitioner if there was anything else he wanted his lawyer to do, and Petitioner responded in the negative.  Id. at 252.  As such, the defense opted not to call Detective Peavy.

Notably, Mr. Cummings testified the last affirmative access of the laptop was on January 22, 2009.  Even if the defense had called Detective Peavy to testify concerning an arrest on January

43

23, 2009, this would not discount the affirmative access of the computer on January 22, 2009. Moreover, the analyst had thoroughly explained that the computer refreshed itself through an operating system backup on January 31, 2009, without a user accessing the system.

As noted by Respondents, defense counsel waived the issue when he decided not to call Detective Peavy after discussion with his client off the record. Response at 49-50. On the record, Petitioner affirmed that he did not want counsel to take further action. Ex. E at 252.

Upon the filing of Petitioner's state petition for writ of habeas corpus, the 5th DCA reviewed Petitioner's argument concerning Petitioner's contention that his appellate counsel should have raised the issue concerning trial counsel's failure to raise trial counsel's objection concerning the state's witness, Detective Mark Peavy's, misleading statement concerning the time of Petitioner's arrest, and the 5th DCA rejected the claim, finding it without merit, thus making its determination that no appellate relief would have been forthcoming on this ground. Ex. O. Therefore, Petitioner has not shown a reasonable probability the outcome of his direct appeal would have been different had

appellate counsel argued as Petitioner suggests appellate counsel should have argued on direct appeal.

The 5th DCA did not misapply <u>Strickland</u> in denying this claim. As the state court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of appellate counsel, Petitioner is not entitled to habeas relief.

The state court's ruling is entitled to AEDPA deference. Its decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts. Thus, AEDPA deference is due, and Petitioner is not entitled to habeas relief on ground 3.

**Ground 5: the ineffective assistance of appellate counsel for failure to investigate and improper reliance on phone calls to file an <u>Anders</u> brief, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

Petitioner raised this issue in claim five of the state habeas corpus petition. Ex. L at 6-7. The 5th DCA denied the petition. Ex. O. This is a qualifying state court decision entitled to AEDPA deference.

Of import, defense counsel did not object when the redacted tapes of the phone calls were played for the jury. Ex. E at 25-26, 45, 69, 74, 80-81, 86-87, 93, 97, 102. Any issue about the phone calls being confusing was not preserved for appeal. See Petition at 12.

Apparently, Petitioner is claiming appellate counsel failed to adequately read the trial transcript of the phone calls before stating, "that call and subsequent calls referring to pictures of nude children on appellant's various electronic equipment were published to the jury without objection." Ex. G at 1. In his state habeas petition, Petitioner asserts appellate counsel should have alleged the phone calls served to confuse the jury. Ex. L at 7. In his federal Petition, Petitioner states trial counsel did not object to the playing of the phone calls at trial because the phone calls did not concern any illegal activity and only once referenced nude children. Petition at 12.

Although this claim is not a model of clarity, it is clear defense counsel did not object to the playing of the phone calls. Therefore, the matter was not preserved for appeal. Of importance, Ms. Watts did testify she went on the computers and the thumb drives and "found pictures of little girls that were either half naked or in various positions." Ex. E at 72-73.

Thereafter, redacted phone calls were played for the jury which supported her statement. In a phone call, Ms. Watts told Petitioner she found creepy stuff on the memory chip. <u>Id</u>. at 75. She asked Petitioner why there were pictures of kids with no clothes on in the white disc "or whatever[.]"[8] <u>Id</u>. at 77. She mentioned the images of children downloaded onto the MP3 player. <u>Id</u>. at 88, 92. On cross examination, defense counsel asked Ms. Watts about finding "some pictures of child pornography." <u>Id</u>. at 107. During the recorded phone calls, Petitioner repeatedly asked Ms. Watts to destroy the evidence and questioned whether she was trying to put him in prison for life.

The Court concludes appellate counsel did not perform deficiently in her assessment of the case and her decision to file an <u>Anders</u> brief raising one issue concerning the denial of the motion for judgment of acquittal.

Upon the filing of Petitioner's state petition for writ of habeas corpus, the 5th DCA reviewed Petitioner's argument concerning Petitioner's contention that his appellate counsel should have raised the issue of appellate counsel's failure to investigate and improper reliance on phone calls to file an <u>Anders</u>

---

[8] Ms. Watts later referred to the disc as a flash or thumb drive instead of a disc. Ex. E at 107-109.

brief, and the 5th DCA rejected the claim, finding it without merit, thus making its determination that no appellate relief would have been forthcoming on this ground. Ex. O. Therefore, Petitioner has not shown a reasonable probability the outcome of his direct appeal would have been different had appellate counsel argued as Petitioner suggests appellate counsel should have argued on direct appeal.

The denial of relief on the ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of Strickland. Therefore, Petitioner is not entitled to habeas relief on ground 5.

**B. Ineffective Assistance of Trial Counsel**

**Ground 6: the ineffective assistance of counsel for failure to challenge the care, custody, and control of the equipment, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

In ground 6 of the Petition, Petitioner claims his counsel failed to meet Sixth Amendment standards by failing to challenge the care, custody, and control of the equipment. Petition at 13. This claim was presented in a post-conviction motion as claim 1(a), Ex. R at 2-3, and summarily denied. Ex. U at 101-102. The court set forth the Strickland standard before addressing this claim. Id. at 100-101. The court rejected the claim, explaining that

defense counsel presented this argument at trial in both opening and closing statements.  Id.  The court found Petitioner's "claim that Counsel was ineffective for not arguing that multiple individuals had access to the computer equipment is refuted by the record."[9] Id. at 102.  As such, the trial court found no deficient performance.  As he did not satisfy the performance prong of Strickland, Petitioner is not entitled to relief on his ineffective assistance of counsel claim.

The 5th DCA affirmed without an opinion and explanation.  Ex. JJ.  This decision, although unexplained, is entitled to AEDPA deference.  Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

Thus, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland, and the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.  Thus, ground 6 is due to be denied.

---

9 Defense counsel also made the care, custody, and control argument in support of the motion for judgment of acquittal.  Ex. E at 235. He asserted the equipment was found in the possession of two women and none of it was specifically linked to Petitioner.  Id.  The trial court denied the motion for judgment of acquittal.  Id.

**Ground 7:   the ineffective assistance of counsel for failure to suppress evidence seized by illegal search and seizure.**

The Court's review is limited to the claim exhausted in ground 1(b) of Petitioner's Rule 3.850 motion.  Ex. R at 3-5.  In that claim, Petitioner argued Ramona Garcia, Petitioner's sister, did not have authority to give consent to search the computers and related equipment although she was the lease holder of the residence.  Id. at 3.  Petitioner argued counsel was ineffective for failure to file a motion to suppress illegally obtained evidence.  Id.

The trial court summarily denied this claim finding it without merit as the computer equipment was searched pursuant to a warrant.  Ex. U at 102.  The 5th DCA affirmed this decision.  Ex. JJ.

The record contains the Search Warrant and the Affidavit for Search Warrant.  Ex. U at 146-55, Exhibit C.  Affiant Mark Peavy attested that the police, on January 31, 2009, were contacted by an anonymous caller regarding child pornography.  Id. at 150-51.  In the Affidavit, Petitioner's sister, Ms. Garcia, is identified as the homeowner.  Id. at 151.  Petitioner gave Mary Watts, his ex-wife, permission to retrieve the laptop computer and other computer related items from Ms. Garcia's house.  Id.  Instead of just retrieving these items, Ms. Watts logged onto the computer

and discovered numerous pornographic photographs of underage females. Id. She played some of this material for a police officer. Id. Petitioner's sister asked the police officers to remove Petitioner's computers from her house. Id. at 152. The officers placed the items into evidence at the Sheriff's Office Operations Center. Id. Detective Peavy completed an affidavit asking that a search warrant be issued to search for evidence and items, including any and all instrumentalities of the crimes described in the affidavit. Id.

On February 12, 2009, the county/circuit judge signed the Search Warrant allowing the search of the computer and related equipment maintained in the evidence section of the Sheriff's Office to be searched. Id. at 146-47.

The 5th DCA affirmed the trial court's decision that defense counsel did not act outside the broad range of reasonable assistance under prevailing professional standards by failing to file a motion to suppress under these circumstances. Pursuant to Wilson, it is assumed the 5th DCA adopted the reasoning of the trial court in denying the motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 5th DCA. The Florida court's decision is not inconsistent with Supreme Court

precedent, including Strickland and its progeny.  Moreover, the
state court's adjudication of this claim is not contrary to or an
unreasonable application of Strickland or based on an unreasonable
determination of the facts.  Thus, ground 7 is due to be denied.

**Ground 8:  the ineffective assistance of counsel for failure to
move for a judgment of acquittal based on insufficiency of the
evidence, in violation of the Fifth, Sixth, and Fourteenth
Amendments.**

In ground 8, Petitioner raises another claim of ineffective
assistance of counsel, contending his counsel performed
deficiently for failure to request a motion for judgment of
acquittal based on insufficiency of the evidence as "it takes more
than deleted pictures and ownership to prove possession."
Petition at 16.  Petitioner raised this issue in his post-
conviction motion as claim two, Ex. R at 5-11, and the trial court
summarily denied relief finding the claim refuted by the record
and without merit.  Ex. R at 102-103.

The Court finds Petitioner is not entitled to relief on this
ground as it is abundantly clear, from the record, defense counsel
moved for a judgment of acquittal, asking the trial court to grant
the motion based on insufficiency of the evidence.  Ex. E at 233-
35.  Counsel argued the state's expert said there were no actual

images or videos accessible by anyone found on the hard drives of any of the devices. Id. at 233-34. He further argued no proof of possession. Id. at 234-35. Counsel said the videos were not accessible, they had been deleted, and the items were not actually found in Petitioner's possession. Id. at 235. Defense counsel reminded the court the computers and related items were found in the possession of two women and none of the items were linked to Petitioner other than the women saying the items were his. Id. Mentioning the phone calls, the court denied the motion for judgment of acquittal, finding sufficient evidence to go to the jury. Id.

Petitioner appealed the denial of his Rule 3.850 motion. Pursuant to Wilson, it is assumed the 5th DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 5th DCA. Ex. JJ. Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, ground 8 is due to be denied.

**Grounds 9, 10, 11, and 13 (related claims addressed together):**

**Ground 9:  the ineffective assistance of counsel for failure to investigate and move to suppress Petitioner's phone calls to family used to circumvent <u>Miranda</u>, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

**Ground 10:  the ineffective assistance of counsel for failure to suppress phone calls used to circumvent <u>Miranda</u>, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments.**

**Ground 11:  the ineffective assistance of counsel for failure to suppress phone calls when Petitioner had an expectation of privacy, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

**Ground 13:  the ineffective assistance of counsel for failure to move for suppression of irrelevant phone calls, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

In combination, these grounds (grounds 9, 10, 11, and 13), raise a claim of ineffective assistance of counsel for failure to investigate and move to suppress Petitioner's phone calls, asserting the phone calls were irrelevant, used to circumvent <u>Miranda</u>, and invaded Petitioner's right to privacy.  Petition at 17-18, 19, 20-21, 23-24.  Petitioner exhausted these claims by presenting them in his post-conviction motion (claims three, seven, eight of the initial Rule 3.850 motion, and claim fifteen of the supplemental motion), Ex. R at 11-14, 22-26; Ex. S at 48, and, after denial by the trial court, Ex. U, raising the issues on appeal of the denial of the post-conviction motion.  Ex. JJ.

Upon review, the trial court denied these claims, finding them to be without merit.  Ex. U at 104-106, 110.  The court found the phone calls were not subject to <u>Miranda</u> because Petitioner initiated the phone calls from the jail and any motion to suppress would have been unsuccessful.  <u>Id</u>. at 104.  The court also found there was no violation of his right to counsel during the jail phone calls.  <u>Id</u>. at 105.  The court found no reasonable expectation of privacy in a telephone communication from the Marion County Jail, noting that all calls from the jail are monitored and recorded.  <u>Id</u>. at 106.  Finally, the court rejected Petitioner's claim concerning the admissibility of the phone calls and denied his claim of ineffective assistance of counsel finding it to be without merit.  <u>Id</u>. at 110.

As noted by Respondents, there was no custodial interrogation involved in the phone calls.  Also, there were no viable grounds to seek to suppress the phone calls, even if they were deemed to be controlled phone calls.  There was not enough evidence to support a claim that Petitioner's sister and ex-wife were acting as agents for the police.  Moreover, if the calls were recorded under the direction of law enforcement pursuant to an investigation, the calls would fall under a special exemption under

Fla. Stat. § 934.03(2)(c), as one of the parties consented to the taping of the conversations. <u>See</u> Response at 65. Indeed,

> [f]or purposes of obtaining evidence of a criminal act, Fla. Stat. § 934.03(2)(c), authorizes a law enforcement officer to intercept a communication electronically when one of the parties to the communication has given prior consent. <u>State v. Welker</u>, 536 So.2d 1017, 1020 (Fla. 1988). Proof of consent for this purpose is governed by the traditional rules of evidence, and there is no requirement that consent be proven by the testimony of the consenting party. <u>Id</u>.

<u>Sairras v. Fla. Dep't of Corr.</u>, 496 F. App'x 28, 33 (11th Cir. 2012) (per curiam).

The trial court concluded there was no reasonable expectation of privacy in Petitioner's phone calls from the jail. <u>See</u> <u>Higley v. Sec'y, Dep't of Corr.</u>, No. 8:11-cv-1482-T35EAJ, 2018 WL 9562225, at *9 (M.D. Fla. 2018) (the location in which the communication occurred is a significant factor in determining whether a defendant's expectation of privacy was reasonable). A reviewing court must ask whether society is prepared to recognize the expectation of privacy as reasonable. <u>Id</u>. Here, the trial court concluded there was no reasonable expectation of privacy in a phone call from a jail and the appellate court affirmed. This determination is entitled to deference.

Alternatively, assuming there existed a reasonable expectation of privacy in the calls from the jail, there was no prejudice because Petitioner's ex-wife and sister could have testified as to the content of the conversations. See Response at 65. Thus, Petitioner does not satisfy the prejudice prong of Strickland.

Finally, Petitioner has offered no justifiable basis for suppression. There was no improper police conduct. The calls were certainly probative as Petitioner admitted knowledge of the content of the photographs, he stated knowledge that pornographic images were on his devices and equipment, he expressed grave concern that the content would result in his being sent to prison, and he acknowledged that their discovery by the police would be so damaging that he asked his family to destroy evidence to prevent his being sent to prison. In this regard, the calls were clearly probative and any argument to the contrary would have been unsuccessful.

The Court is not convinced defense counsel's performance fell below an objective standard of reasonableness. Indeed, counsel's actions were well within the scope of permissible performance. The standard is reasonable performance, not perfection. Brewster, 913 F.3d at 1056 (citation omitted). In addition, Petitioner has failed to show resulting prejudice, the second prong of the

Strickland standard. There is no reasonable probability that the outcome of the case would have been different if trial counsel had taken the action suggested by Petitioner.

The Court concludes AEDPA deference is warranted. The record shows the 5th DCA affirmed the decision of the trial court, Ex. JJ, and the Court presumes that the appellate court adjudicated the claim on its merits, as there is an absence of any indication of state-law procedural principles to the contrary. Since the last adjudication is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed in this endeavor. Thus, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, grounds 9, 10, 11, and 13 are due to be denied.

**Ground 16: the ineffective assistance of counsel for failure to object and preserve the issue that jury instruction 16.11 is unconstitutionally vague for leaving out the definition of possession, a required element of the crime of possession of child pornography, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

Petitioner states he exhausted this claim by raising it in claim ten of his supplemental motion for post-conviction relief.[10] Petition at 28; Reply at 22.  See Ex. S at 42.  The trial court denied relief, Ex. U at 106-107, and the 5th DCA affirmed.  Ex. JJ.

The trial court addressed claim ten of the supplemental motion as a claim of ineffective assistance of counsel for failure to object to the jury instructions.  Ex. U at 106.  The court noted, "[t]he Defendant alleges that the stipulation in the instructions only left the jury to decide whether the Defendant knowingly possessed a photograph or video."  Id.  The court rejected this claim, finding it unsupported by the record and without merit as Petitioner's interpretation of the stipulation "is inaccurate." Id. at 107.

---

10 In his Reply, Petitioner states he exhausted this ground in claim seventeen of his post-conviction motion although he previously stated, in both the Petition and the Reply, he raised the issue in claim ten of his post-conviction motion.  Petition at 28; Reply at 22-23.  Claim seventeen of the Rule 3.850 is a claim of trial court error in giving of the instructions, and most particularly the instruction on the stipulation.  Ex. S at 52-59. The trial court rejected this claim as procedurally barred as it could have or should have been raised on direct appeal since Petitioner was claiming manifest error by the trial court for including the stipulation in the jury instructions.  Ex. U at 111.

The Court looks to the record. The trial record demonstrates the trial court conducted a charge conference. Ex. E at 241. The court asked if there were any objections to the instruction or if the parties had any proposed special instructions. Id. at 246. The prosecutor proposed that a reference be made to twelve counts of possession of child pornography, and the trial court accepted this proposed change. Id. at 246-47. The prosecutor also proposed a change to the standard instruction, 16.11, asking that, rather than referring to the crime as possession of material including sexual conduct by a child, it be referred to as possession of child pornography to be consistent with the terminology used throughout the trial and the rest of the instructions. Id. at 247. The court adopted this proposed change as well. Id. at 247-48. Defense counsel expressed no opposition to the prosecutor's proposed changes and requested no additional changes. Id. at 248.

The record shows, in the amended information, Petitioner was charged with 12 counts of possession of child pornography in violation of Florida Statute § 827.071(5), and in some counts, in violation of § 775.0847 as well. Ex. C. The trial court instructed the jury:

Raymond Garcia the Defendant in this case has been accused of child – Possession of Child Pornography, 12 counts.

To prove the crime of Possession of Child Pornography, the State must prove the following three elements beyond a reasonable doubt:

One, Raymond Garcia knowingly possessed a photograph or a video.

Two, the photograph or video included, in whole or in part, sexual conduct by a child less than 18 years of age.

Three, Raymond Garcia knew that the photograph or video included sexual conduct by a child less than 12 – less than 18 years of age.

**The parties have stipulated that each image or video depicts a child less than 18 years of age.** You should consider that portion of the element proven beyond a reasonable doubt.

Ex. E at 281 (emphasis added).

As noted by the trial court, the stipulation was limited to the age of the children in the images or videos. It did not go to the question of possession, whether the photograph or video included sexual conduct, and whether Petitioner knew the photograph or video included sexual conduct by a child less than 18 years of age.

Defense counsel need not make meritless motions or lodge futile objections that would not have obtained relief. <u>Brewster</u>,

913 F.3d at 1056 (citations omitted).  Under these circumstances, defense counsel would not have prevailed through an objection, as evidenced by the decision of the trial court in denying post-conviction relief.  Petitioner has failed to satisfy the Strickland requirements and he is not entitled to habeas relief on ground 16.  Therefore, ground 16 is due to be denied.

Alternatively, to the extent Petitioner raised and the trial court addressed a claim of ineffective assistance of counsel, the affirmance of the trial court's decision is entitled to deference. The 5th DCA affirmed the decision of the trial court.  Ex. JJ. Applying Wilson's look-through presumption, the rejection of the claim of ineffective assistance of counsel for failure to object and preserve the issue that jury instruction 16.11 is unconstitutionally vague was based on a reasonable determination of the facts and a reasonable application of Strickland.  Finally, the decision is not inconsistent with Supreme Court precedent nor is it contrary to Strickland.

**Ground 18:  the ineffective assistance of counsel for misadvising Petitioner concerning his right to testify, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

Petitioner, in ground 18, claims his counsel was ineffective for misadvising Petitioner "on the right to testify."  Petition

at 31.  Petitioner contends he was ill-advised because his defense counsel said if Petitioner took the stand, the state was going to impeach him.  Id.

Petitioner claimed, in issue twelve of his supplemental post-conviction motion, that trial counsel was ineffective for misadvising Petitioner to not testify due to prior convictions. Ex. S at 44-46.  In reviewing Petitioner's claim, the trial court explained that, first, the court needed to determine whether Petitioner voluntarily agreed with counsel to not take the stand. Ex. U at 108.  Next, if that factor was established, the court would inquire as to whether counsel's advice, even if voluntarily followed, was deficient because no reasonable attorney would have discouraged Petitioner from testifying.  Id.

The record demonstrates the trial court conducted a colloquy to ensure Petitioner understood his decision regarding his right to testify:

> THE COURT:  Mr. Garcia are you going to testify?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  Okay.  You've got – do you understand you have the right to testify, and I assume you have discussed it with your attorney and you have gone over the pluses and minuses, that it's your election without being forced or coerced or threatened to not testify on your behalf; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you wish your attorney to call any witnesses on your behalf?

THE DEFENDANT:  No, sir.

THE COURT:  Okay.

THE DEFENDANT: (Indiscernible) a great job.

THE COURT:  Are you satisfied with his services up to this point?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Very well.

Ex. E at 235-36.

Shortly thereafter, the prosecutor said:

MR. CAMUCCIO:  For the record, he did have numerous prior convictions that would have been impeachable.

THE COURT:  Just for the record, how many priors does he have?

MR. CAMUCCIO:  I was starting to do the math.  Mr. Dunham and I were talking during one of the breaks.  We think it's around 16.

THE COURT:  Sixteen prior convictions that he could be impeached with?

MR. CAMUCCIO:  Yes, sir.

THE COURT:  Do you concur with that Mr. Dunham?

        MR. DUNHAM:  That there would have been
how many convictions?

        MR. CAMUCCIO:  Well, we had said
something like 16.

        MR. DUNHAM:  Yeah.

        MR. CAMUCCIO:  But I hadn't started – I
wasn't going to start counting until I heard
one way or the other so . . .

        THE COURT:  All right.

        MR. CAMUCCIO:  But it's a lot.

        THE COURT:  Okay.  Very well.

<u>Id</u>. at 237-38.

In denying this post-conviction claim of ineffective assistance of counsel, the trial court reviewed the trial transcript and found:

> The colloquy with the Court established that the Defendant was voluntarily waiving his right to testify.  Based on the Defendant's 16 prior convictions and his previous statements recorded in the jail phone calls, a reasonable attorney would have discouraged the Defendant from taking the stand.  This claim is without merit.

Ex. U at 110.

Thus, the trial court, after finding Petitioner's decision voluntary based on the colloquy, considered the second question, whether counsel's performance was deficient because no reasonable attorney would have discouraged Petitioner from testifying.

65

Considering Petitioner's extensive criminal record and the previous statements he made in the recorded jail phone calls, the trial court concluded that a reasonable attorney certainly would have discouraged Petitioner from taking the stand as his testimony would be impeachable.[11] Id.

After its review of the record, the trial court found counsel acted within the range of prevailing professional standards. Finding Petitioner failed to satisfy the first prong under Strickland, the court denied relief. The 5th DCA affirmed. Ex. JJ. Without satisfying the performance component, Petitioner cannot prevail on his claim of ineffective assistance of counsel.

Petitioner appealed the denial of his Rule 3.850 motion. Pursuant to Wilson, it is assumed the 5th DCA adopted the reasoning of the trial court in denying the motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 5th DCA. Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny. Moreover, the state court's adjudication of this claim is not contrary to or an unreasonable application of

---

11 At sentencing, the trial court referenced ten prior felonies along with various other offenses. Ex. E at 304.

Strickland or based on an unreasonable determination of the facts. As such, ground 18 is due to be denied.

**Ground 20: the ineffective assistance of counsel for failure to call defense witness Mark Ash, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

In ground 20, Petitioner raises a claim of the ineffective assistance of counsel for failure to call defense witness Mark Ash. Petition at 34-35. The trial court set forth the two-pronged Strickland standard before addressing this ground. Ex. W at 232. In a very thorough and well-reasoned decision, the trial court rejected this claim of ineffectiveness after conducting an evidentiary hearing, finding counsel made a strategic decision not to call Mr. Ash when there was a failure to transport the witness for trial. Id. at 234-35. During the evidentiary hearing, Petitioner and trial counsel testified. Ex. V. The court concluded defense counsel's performance was not deficient for failure to call Mark Ash. Ex. W at 235. Denying the performance prong of Strickland, the trial court did not reach the prejudice prong. Id. The 5th DCA affirmed. Ex. JJ.

The record shows an Order to Transport had issued. Ex. W at 324. Petitioner said Mr. Ash, a convicted felon, would testify:

"Chris downloaded pictures."[12]  Id. at 233.  Chris Dunham,

Petitioner's defense attorney, testified at the evidentiary

hearing that although an order to transport had issued, Mr. Ash

was not transported for trial.  Ex. V at 218.  Mr. Dunham discussed

the matter with Petitioner and considered the options.  Id.  Mr.

Dunham said the options were to ask for a continuance or go forward

without Mr. Ash.  Id.

In making the decision not to ask for a continuance, Mr.

Dunham testified he thought Mr. Ash's purported testimony may harm

the defense's case.  Id.  Mr. Ash had a criminal record and would

be impeached with that record.  Id. at 218-19.  He would also be

taking the stand and saying he observed someone download child

pornography but did not report it or do anything about it.  Id.

at 219.  Mr. Dunham believed the prosecutor would "have a field

day with that aspect."  Id.

---

12 Petitioner, in his Reply at 35 n.[ ], asks this Court to expand
the record to include Mr. Ash's depositions.  This request is
denied as this Court's review is limited to the record before the
state court that adjudicated the claim on its merits.  Cullen v.
Pinholster, 563 U.S. 170, 181 (2011).  "In addition, by its plain
language, § 2254(d)(2) expressly limits the federal court's review
to the record that was before the state court. See § 2254(d)(2);
see also Pinholster, 563 U.S. at 185 n.7 (noting that § 2254(d)(2)
indicates with "additional clarity" that review is limited to the
state-court record)."  Davis v. Sec'y, Fla. Dep't of Corr., No.
3:14-CV-1200-J-32PDB, 2019 WL 277731, at *1 (M.D. Fla. Jan. 22,
2019).

Additionally, Mr. Dunham believed Mr. Ash's testimony would not be convincing because he could not convincingly say he was with Petitioner every minute and Petitioner never downloaded child pornography. Id. In assessing the situation, Mr. Dunham strongly relied on three factors in not seeking a continuance to call Mr. Ash: (1) Mr. Ash was a convicted felon; (2) Mr. Ash's purported testimony would reveal he watched someone download child pornography but failed to report it; and (3) any testimony Mr. Ash gave that he was with Petitioner every second would not be believable. Id. In short, Mr. Dunham believed Mr. Ash "would have hurt us." Id.

Finally, Mr. Dunham attested that the defense had to decide whether to ask for a continuance or go forward without Mr. Ash, and the defense decided to go forward without Mr. Ash. Id. at 223. See Ex. E at 236 (on the record and in response to the trial court's inquiry, Petitioner announced he did not wish to call any witnesses in his behalf).

Upon review, defense counsel's actions were reasonable. Counsel is given wide latitude in making tactical decisions, like selecting whom to call as a witness. The failure to ask for a continuance and call Mark Ash as a witness under the circumstances described was not so patently unreasonable that no competent

69

attorney would have made that decision. Mr. Dunham's representation was not so filled with serious errors that defense counsel was not functioning as counsel guaranteed by the Sixth Amendment. The state court's determination that Petitioner failed to satisfy the performance prong of Strickland is consistent with federal precedent.

The 5th DCA per curiam affirmed the trial court's decision. Ex. JJ. This Court will presume the state court adjudicated the claim on its merits as there is an absence of any indication or state-law procedural principles to the contrary. Applying the "look-through" presumption of Wilson, the rejection of the claim of ineffective assistance of counsel for failure to call Mark Ash as a witness was based on a reasonable determination of the facts and a reasonable application of Strickland. Petitioner has failed to show there was no reasonable basis for the 5th DCA to deny relief. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to habeas relief on ground 20.

The state court decision passes AEDPA muster as singularly or cumulatively, the proposed deficient conduct does not meet the

Strickland standard and Petitioner was not deprived of a fair trial. Therefore, the Court denies federal habeas relief.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition for Writ of Habeas Corpus (Doc. 13) is **DENIED.**

2.   This action is **DISMISSED WITH PREJUDICE.**

3.   The **Clerk** shall enter judgment accordingly and close this case.

4.   If Petitioner appeals the denial of his Amended Petition for Writ of Habeas Corpus (Doc. 13)**, the Court denies a certificate of appealability.**[13]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on

---

[13] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of February.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/5
c:
Raymond F. Garcia
Counsel of Record